# ADAMS *v.* MURPHY.

PATENTS; INTERFERENCE; ABANDONED EXPERIMENT; PRESUMPTIONS.

Where an applicant in interference with another claims to have reduced
    his invention to practice in July, 1897, but it appears that there-
    after, although he worked upon and procured patents for other
    closely-related inventions, he did nothing with the one in controversy
    until he filed his application in January, 1899, and in the meantime
    his rival entered the field, conceived and perfected the invention and
    filed his application for the device for which there seems to have
    been a demand by the public, the presumption is that that which is
    claimed to have been reduction to practice was no more than a mere
    abandoned experiment.

No. 162.   Patent Appeals.   Submitted November 21, 1900.   Decided May 21, 1901.

HEARING on an appeal from a decision of the Commis-
sioner of Patents, in an interference case.        *Affirmed.*

The facts are sufficiently stated in the opinion.

*Messrs. Church & Church* for the appellant.

*Messrs. Wetmore & Jenner* for the appellee.

Mr. Justice MORRIS delivered the opinion of the Court:

This is an appeal from the decision of the Commissioner
of Patents in an interference case.

The invention in controversy has reference to fastening
devices for gloves and other articles, wherein there are used
a resilient or spring-stud member and a rigid socket member,
adapted to become firmly attached to each other, yet so as to
permit a ready disengagement.   And the special purpose of
the invention seems to have been to reduce the number of the

component parts of the spring-stud, while at the same time
securing firmness, elasticity, and facility of attachment to
the fabric. The issues or statements of the invention are
six in number, not substantially differing from each other
so far as the question of invention is concerned, and are as
follows:

" 1. A spring-stud intended for engagement with a rigid
socket, consisting of a head made resilient by vertical slits,
a flanged base integral with the lower end of the head, a
centrally-located interior tube integral with the upper end
of the head and depending therefrom, said tube operating as
a support for the resilient head.

" 2. A stud intended for engagement with a rigid socket,
said stud consisting of a head made resilient by vertical slits,
a flanged base at the lower end of the head, a centrally-
located interior tube integral with the upper end of the head,
depending therefrom and projecting below the under side of
the fabric to which the stud may be attached, said tube
operating as a support for the resilient head.

" 3. A spring-stud consisting of a head, made resilient by
vertical slits, a centrally-located interior tube integral with
the upper end of the head, and depending therefrom, in com-
bination with a flanged eyelet adapted to enter the centrally-
located interior tube and to be expanded within the same to
attach the stud to the fabric.

" 4. A stud member for separable fasteners having a base-
flange, outwardly-bowed resilient sections extending there-
from upwardly to form a head, and an internal attaching-
stem formed integral with and depending from the top of said
head; substantially as described.

" 5. A stud member for separable fasteners having a base-
flange, outwardly-bowed resilient sections extending up-
wardly therefrom to form a head, and a tubular internal at-
taching-stem formed integral with and depending from the
top of said head, the lower end of said stem being contracted,
substantially as described.

" 6. A spring-stud consisting of a head, made resilient by
vertical slits, a centrally-located interior tube integral with

the upper end of the head and depending therefrom, and means for securing the centrally-located interior tube to the fabric, substantially as described."

William B. Murphy was the first to come into the Patent Office: he filed his application on August 17, 1898. In his preliminary statement filed for the interference he alleged that, after some partial conceptions of the invention in the years 1895 and 1896, he conceived the complete invention about November 15, 1897, and reduced it to practice about December 1, 1897, by the construction of a full-sized working stud, afterward by the construction of two others, all of which he exhibited to other persons, and thereafter by making one or more each month. He had not, however, attempted to manufacture the article on a commercial scale; although in April of 1898, he began to make tools for the construction of the studs for commercial use.

George E. Adams filed his application in the Patent Office on January 14, 1899, nearly five months after Murphy. In his preliminary statement, he alleged that he conceived the invention, made it public, and reduced it to practice by the construction of a sample which was a full-sized operative device all in the month of July, 1897; but that he had not manufactured any of the articles for the market.

Upon the testimony adduced in the cause, all three of the tribunals of the Patent Office awarded judgment of priority of invention to the appellee Murphy. A curious condition, however, was developed in the board of examiners-in-chief. Only two of the three members of the board sat in the case and heard the arguments. They were divided in opinion. Then the third member of the board read the record, and decided in favor of Adams; whereupon Murphy appealed to the Commissioner. The latter regarded the intervention of the third member of the board as irregular, and the action of the board as equivalent to an affirmance of the decision of the examiner of interferences. Upon consideration of the merits, he awarded judgment of priority to Murphy. And from his decision Adams has prosecuted the present appeal.

No question seems to be made as to the fact that Murphy conceived, disclosed, and reduced to practice the invention in controversy, except as stated in the second count, about the beginning of December, 1897; and that, as to count second, he reduced it only to constructive practice by the filing of his application. But whether his reduction to practice was actual or only constructive of any or all the issues, is of no consequence under the circumstances of the present case. He is entitled in any case to constructive reduction to practice as of the date of the filing of his application, August 17, 1898. It is unnecessary to review the testimony on his behalf, as it is not attacked, and its sufficiency seems to be conceded to establish his claim as set forth in his preliminary statement. The controversy has been made to depend upon the sufficiency of the testimony on behalf of Adams to show conception of the invention by him and its actual reduction to practice in July of 1897, which, of course, would antedate the conception of Murphy. It is not claimed or shown that Adams did anything whatever in reference to this invention between the end of July of 1897 and the time of his application to the Patent Office on January 14, 1899. Consequently, unless he reduced the invention to actual practice in the month of July of 1897, he must necessarily fail. For in the interval between July of 1897 and January of 1899, during which, so far as this invention is concerned, Adams was wholly inactive, without any excuse for the inactivity, Murphy entered the field, conceived the invention, reduced it to practice, and filed his application in the Patent Office. The question then is reduced to the inquiry whether Adams had the invention and reduced it to practice in July of 1897.

The testimony in support of his claim consists mainly of his own and that of Henry C. Hine, who is secretary of the company of which the appellant is vice-president. Of his own testimony, which fairly enough supports his preliminary statement, the salient points are, that on or before July 9, 1897, he made drawings of his invention; that on that day he called Hine to witness them; that these drawings or sketches, which were produced in evidence in the cause,

showed two different inventions very nearly related to each other, both appearing on the same piece of paper, of which one was the invention now in controversy and the other was one for which the appellant subsequently obtained a patent; that the paper bore words and figures to the following effect: " Sketches made July 9, 1897, Geo. E. Adams; " " Witnessed July 9, '97, H. C. Hine," of which all, except the name of H. C. Hine, were in the handwriting of Adams; that the name of Hine was appended by himself when he was called to witness the sketches; that subsequently in the same month Adams manufactured dies with which he made the studs involved in the controversy; that he made several specimens of studs, and carefully preserved both the dies and studs, all of which were offered in evidence.

Hine's testimony was substantially to the effect that he remembered his witnessing the sketches at the request of Adams on July 9, 1897, a date which he claimed to remember distinctly and positively upward of two years afterward when he testified, although his memory was weak about everything else, and he gives no reason whatever for remembering this date above any other: and he identified the dies used by Adams and the specimens of studs manufactured by the latter with these dies.

And yet it subsequently appeared conclusively in the evidence, and it was admitted by Adams, that the dies so confidently identified and produced could not make the studs which had been shown as their product. Thereupon another die was produced and offered in evidence which could do the work.

All this was very unfortunate for the case of Adams. As was well pointed out by the Commissioner of Patents in his opinion contained in the record before us, not only his position as the junior applicant, but likewise the rule laid down by this court in the case of *Warner* v. *Smith,* 13 App. D. C. 111; 84 O. G. 311, required him to account satisfactorily for his delay, wholly unexplained, and his total inaction in respect of this invention for which no excuse is given, although during this same period he was active enough in procuring

patents for other closely-related inventions. We said in that case that delay and inaction of this kind totally unexplained, during which a rival entered the field of invention, conceived and perfected the invention, and made his application to the Patent Office for a device for which there seems to have been a demand by the public, would justify the Patent Office and the courts in presuming that what was claimed to be reduction to practice amounted to no more than a mere abandoned experiment until the contrary is clearly shown.

We are not persuaded that the proof in this case on behalf of Adams, on whom is the burden of proof, is clear and satisfactory. It is not such as carries conviction with it. It is discredited by its own inherent weakness. The mistake in regard to the dies, while perhaps in itself excusable and capable of satisfactory explanation, is sufficient to show that implicit reliance is not to be placed on other portions of the testimony.

We are of opinion that the decision of the Commissioner of Patents was right and just, and that it should be *affirmed. Judgment of priority of invention is awarded to the appellee, William B. Murphy.*

*The clerk of the court will certify this opinion and the proceedings of the court in the cause to the Commissioner of Patents.*